UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DELBERT CHARGING CROW, JR., | 4:24-CV-04145-LLP |
| Plaintiff, | 1915A SCREENING ORDER |
| vs. | |
| TABITHA BENTING, Warden,[1] | |
| Defendant. | |

Plaintiff, Delbert Charging Crow, Jr., an inmate at the South Dakota State Penitentiary (SDSP), filed a pro se complaint. Doc. 1. This Court granted Charging Crow's motion for leave to proceed in forma pauperis. Doc. 12. Charging Crow also moved to amend his complaint. Doc. 8. This Court denied Charging Crow's motion to amend because he failed to comply with the local rules but granted him thirty days to file an amended complaint. Doc. 12 at 3–4. The thirty days have expired, and Charging has not filed an amended complaint. Thus, this Court screens Charging Crow's original complaint under 28 U.S.C. § 1915A. Charging Crow's filings are at times incomprehensible. This Court recites his factual allegations and analyzes his requests for relief that are comprehensible.

---

[1] Charging Crow's complaint was missing the first page identifying whom he names as defendants. *See generally* Doc. 1. With his complaint, Charging Crow filed a motion for leave to proceed in forma pauperis, which identified as a defendant Warden Tabitha Benting. Doc. 2 at 1. For the purposes of screening, this Court will assume that Charging Crow intended to name Benting as a defendant in his complaint.

## I.    Screening

### A.    Factual Background as Alleged by Charging Crow

Charging Crow claims that he ingested his own feces and has Hepatitis A, which caused pain in his kidneys. Doc. 1 at 1. He is also blind in one eye and has lung pain and breathing problems. *Id.* at 4. He is prescribed medication that causes him to sleep from 4 p.m. until 9 a.m. daily. *Id.* at 2. He attempted to request medical attention through multiple avenues. *Id.* at 1–2. The GTL tablets prevented him from being seen by medical. *Id.* at 1. Staff would not always permit grievances to be filed.[2] *Id.* at 2. He tried to use the phone to get medical help, but the phone system in one section has been destroyed for over ninety days. *Id.* at 1–2. He tried to write a letter to his family but was unable to because he had no money on his account.[3] *Id.* at 1. He also alleges that he has mail sent to him at the prison, but he was not notified about it because the sender was not on his visit list. *Id.* at 3.

He alleges that he has cut himself repeatedly in an attempt to receive a disciplinary action, in hopes that he can see medical. *Id.* at 2. However, staff simply said, "oh see he Does this all the time he'll be ok. no medical actions." *Id.* He claims that medical staff have ignored his requests for medical care and instead focused on the tough and violent inmates first. *Id.* at 1. Because Charging Crow was not a strong inmate, he threw water on staff in an attempt to get attention. *Id.*

---

[2] Charging Crow claims that the SDSP staff do not pass out grievance forms. Doc. 1 at 1, 3–4. He claims that staff will mace people in warning if they file grievances, but Charging Crow does not allege that he has ever been maced. *Id.* at 1.

[3] Charging Crow alleges that "elderly people sending money say they won't give the [South Dakota Department of Corrections] their social security # so theres [sic] a lot of money [he] can't use to pay the courts." Doc. 1 at 3 (capitalization in original omitted).

After Charging Crow complained to SDSP staff, he was transferred to a cell with fiberglass pieces and shards all over it. *Id.* at 1, 4. He got glass in his hair, eyes, and privates. *Id.* at 1. He reported the glass to officers, but the officers did nothing. *Id.* at 4. When he asked why the glass was not cleaned up, staff allegedly said that they believe that some staff "are trying to get fired so they Don't have to deal with the mess they made of most the inmates about 100 all same in the [severely mentally ill] 5 to 6 person Ad[ministrative] Seg[regation] program." *Id.*

Charging Crow requests to be housed at the South Dakota Human Services Center (HSC) or a hospital and "want[s] medical care like [a]ny other inmate/prisoner[.]" *Id.* at 5. He requests that this Court "look into The 'SMI' severly [sic] mentally ill Ad seg programs And Living conditions at the Jameson Annex prison[.]" *Id.* He specifically requests that "[t]he back windows be inspected cause they blow air that smells like gases[.]" *Id.* He also requests that "all 3 monopolies[4] . . . be looked into[.]" *Id.* at 6. He also seeks "unlimited funds to pay the rent which is unlimited" and notes that "[t]he relief of unlimited funds will match there [sic] amount they plan on taking from [him]." *Id.* at 5.

**B.     Legal Background**

When screening under § 1915A, the court must assume as true all facts well pleaded in the complaint. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a pro se complaint must contain specific facts supporting its

---

[4] By all three monopolies, Charging Crow appears to be referencing commissary, inmate bank accounts, and "unregistered lifers program monopoly accounts[.]" Doc. 1 at 6.

conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory"). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The Court will now assess each individual claim under 28 U.S.C. § 1915A.

### C.    Discussion

#### 1.    Capacity

Charging Crow does not specify if he sues Defendant in her individual or official capacity. *See generally* Doc. 1. The Eighth Circuit has instructed that when a plaintiff does not specify whether a defendant is sued in his or her individual or official capacity, the Court must apply the course of proceedings test. *S.A.A. v. Geisler*, 127 F.4th 1133, 1138 (8th Cir. 2025) (en banc). The fundamental question is whether the defendant has been put on notice that she was

4

sued in her individual capacity, and courts should look to the relevant factors, which "include, but are not limited to, how early in the litigation the plaintiff first specified individual capacity claims, whether the plaintiff's complaint included a prayer for punitive damages, and whether the defendant declined to raise a qualified immunity defense." *Id.* at 1139. The Eighth Circuit noted that sister circuits could offer guidance on relevant factors; other circuits have considered the nature of the plaintiff's claims and whether defendant acted in accordance with a government policy or custom. *Id.*; *Goodwin v. Summit Cnty.*, 703 F. App'x 379, 382 (6th Cir. 2017); *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995).

Here, Charging Crow requests money damages and injunctive relief. "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011). For the purposes of screening, this Court will liberally construe Charging Crow's complaint to allege individual and official capacity claims.

### 2.  Individual Capacity Claims

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up).

Here, Charging Crow has not alleged that Benting engaged in any action that violated his constitutional rights, nor has he alleged that his constitutional rights were violated because of

Benting's failure to train or supervise her staff.[5] *See generally* Doc. 1. Thus, Charging Crow has failed to state a claim upon which relief may be granted, and Charging Crow's claims against Benting in her individual capacity are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3.    Official Capacity Claims

#### a.    Claims for Money Damages

Liberally construing Charging Crow's complaint, he sues Benting in her official capacity for money damages for "unlimited funds to pay the rent which is unlimited[.]" Doc. 1 at 5. The Supreme Court has held that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* Here, Charging Crow seeks monetary damages against Defendant. Doc. 1 at 5. Official capacity claims for money damages against a defendant employed by the State of South Dakota are the equivalent of claims for

---

[5] Charging Crow mailed a letter to this Court that is generally incomprehensible. Doc. 15. In the letter, he alleges that Benting engaged in some activity with GTL and Viapath about incorporating his work into a domain and engaging in conversations with his contributor. *Id.* He also mentions how his original work has been used, which infringes upon his copyright. *Id.* at 5. The allegations of this letter are disjointed, and it is unclear what is the purpose of the letter. If Charging Crow intends to amend or supplement his complaint, he should file a comprehensible document clearly identifying his request to amend or supplement in accordance with Federal Rule of Civil Procedure 15(a) or (d) and this Court's Local Rule 15.1. *See* Doc. 12 at 3–4 (previously notifying Charging Crow of the rules he has to follow to file an amended complaint).

money damages against the State of South Dakota. The State of South Dakota has not waived its sovereign immunity. Thus, Charging Crow's claims against Benting in her official capacity for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### b.    Claims for Injunctive Relief

"The requisite elements of Article III standing are well established: A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 816 (8th Cir. 2008) (quoting *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 598 (2007)). Thus, Charging Crow has standing to bring claims for injunctive relief if the relief he seeks would redress his alleged injuries. *See id.* (citing *Hein*, 551 U.S. at 598). To allege claims for injunctive relief against defendants in their official capacity, Charging Crow generally must only allege that Defendant "by virtue of his [or her] office, has some connection" with the unconstitutional policy in question for which Charging Crow seeks injunctive relief. *See Ex parte Young*, 209 U.S. 123, 157 (1908).

### (i).    First Amendment Retaliation

Liberally construing Charging Crow's complaint, he alleges a First Amendment retaliation claim because after he complained, he was transferred to a cell covered in fiberglass shards in administrative segregation. Doc. 1 at 4. In order for a plaintiff to allege a First Amendment retaliation claim, he must show that "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir.

2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). "The filing of a prison

grievance, like the filing an inmate lawsuit, is protected First Amendment activity." *Lewis v.*

*Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (citing *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir.

1994)).

 Here, Charging Crow claims that he complained about his treatment at the SDSP. Doc. 1

at 4. After he complained, he was transferred to a cell covered in fiberglass shards in

administrative segregation. *Id.* He has not clearly alleged that the transfer was motivated, at least

in part, by his filing a grievance. *Id.* Even if Charging Crow had shown retaliatory motive, his

First Amendment retaliation claim for injunctive relief would still be dismissed for lack of

standing. The only injunctive relief Charging Crow seeks is: (1) housing at HSC or a hospital;

(2) medical care like any other prisoner; and (3) investigation into the SMI administrative

segregation programs and living conditions, the back windows, and the monopolies. *Id.* at 5–6.

Charging Crow does not seek any injunctive relief for violation of his First Amendment right to

be free from retaliation. Thus, Charging Crow's First Amendment retaliation claim against

Benting in her official capacity for injunctive relief is dismissed without prejudice under 28

U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

   **(ii). First Amendment Right to Send and Receive Mail**

 Charging Crow alleges that prison staff have tampered with his mail and denied mail sent

for him. Doc. 1 at 3. The Eighth Circuit has recognized that inmates retain a First Amendment

right to "send and receive mail." *Thongvanh v. Thalacker*, 17 F.3d 256, 258 (8th Cir. 1994)

(citations omitted). The Eighth Circuit applied a four-factor test to prison mail regulations:

> (1) whether there is a valid rational connection between the regulation and the
> legitimate government interest it purports to further; (2) whether the inmate has an
> alternative means of exercising his constitutional right; (3) the impact that

accommodation of the inmate's right would have upon others, including inmates as well as non-inmates; and (4) the absence of a ready alternative to the regulation. *Turner v. Safley*, 482 U.S. 78, 89 (1987). *Turner*'s standard applies to both incoming and outgoing mail. *Thongvanh*, 17 F.3d at 259 (citing *Smith v. Delo*, 995 F.2d 827, 830 (8th Cir. 1993)).

Here, Charging Crow alleges that he has not been allowed to send mail to his family because he did not have money on his account. Doc. 1 at 1. The Eighth Circuit has held that "indigent inmates have no constitutional right to free postage for nonlegal mail." *Hershberger v. Scaletta*, 33 F.3d 955, 957 (8th Cir. 1994) (citing *Kaestel v. Lockhart*, 746 F.2d 1323, 1325 (8th Cir. 1984)). Charging Crow has not alleged any facts showing that he was not allowed to send any mail to his family because he was indigent. Doc. 1 at 1. Instead, he alleges that he was unable to send mail on one particular occasion. *Id.*

He also claims that was not notified that he received mail because the sender was not on his visit list. *Id.* at 3. However, Charging Crow does not request any injunctive relief that would remedy an alleged violation of his First Amendment right to send and receive mail. *Id.* at 5–6 (requesting injunctive relief of (1) housing at HSC or a hospital; (2) medical care like any other prisoner; and (3) investigation into the SMI administrative segregation programs and living conditions, the back windows, and the monopolies).[6] Thus, Charging Crow's First Amendment right to send and receive mail claim against Benting in her official capacity for injunctive relief

---

[6] In Charging Crow's complaint, he alleges that he would like the inmate bank accounts looked at because he has had unlimited funds taken to pay rent. Doc. 1 at 5–6. He claims that he was unable to write a letter to his family because he did not have money on his account. *Id.* at 1. But Charging Crow complaint does not indicate that investigating the inmate bank accounts would redress his alleged injury for a First Amendment right to send and receive mail claim.

is dismissed without prejudice for failure to state a claim upon which relief may be granted under
28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### (iii).    First Amendment Right to Communication

Charging Crow claims that the phone service has been broken for over ninety days. Doc.
1 at 1–2. The Eighth Circuit has held that inmates do not have an unlimited right to phone use.
*Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir. 1989). "Although in some instances prison
inmates may have a right to use the telephone for communication with relatives and friends,
prison officials may restrict that right in a reasonable manner, 'subject to rational limitations in
the face of legitimate security interest of the penal institution.'" *Id.* (quoting *Hutchings v. Corum*,
501 F. Supp. 1276, 1296 (W.D. Mo. 1980)). "[T]he extent of inmates' First Amendment right to
communicate with the outside world is a fact-intensive universe." *Holloway v. Magness*, 666
F.3d 1076, 1079 (8th Cir. 2012). Courts apply the four *Turner* factors when analyzing whether a
prison regulation violates an inmate's right to communication with the outside world. *Benzel*,
869 F.2d at 1108.

Some courts have held that not allowing an inmate to make a phone call for several
months did not violate an inmate's First Amendment rights when the plaintiff had other means of
communication. *Middlebrook v. Perttu*, 2023 WL 8230376, at *3–4 (W.D. Mich. Nov. 28, 2023)
(holding that denial of phone access for over three months did not violate inmate's First
Amendment rights); *Owens v. Williams*, 2024 WL 102995, at *3 (W.D. Ky. Jan. 9, 2024) (noting
that denial of access to phone calls for two months did not violate his First Amendment rights
when he could contact his family through mail or visits).

Here, Charging Crow alleges that he was not allowed to phone calls for ninety days
because the phone system was broken. Doc. 1 at 1–2. He claims that he had been unable to write

to his family because he did not have money on his account. *Id.* at 1. He also claims that mail has been sent to him, but he was not notified because the sender was not on his visit list. *Id.* at 3. He claims that elderly people have not been allowed to send him money because the elderly people do not want to provide the South Dakota Department of Corrections with their social security number. *Id.* Charging Crow does not allege that he has been denied visits from his family or friends. *See generally id.* Because Charging Crow has other avenues besides phone calls to visit with family and friends, he has not alleged sufficient facts for his First Amendment right to communication for denial of access to a phone to survive screening. Even if Charging Crow had stated a factually sufficient First Amendment right to communication claim, he has not sought any injunctive relief which would redress his alleged injury. *See* Doc. 1 at 5–6. Thus, Charging Crow's First Amendment right to communication claim against Benting in her official capacity for injunctive relief is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### (iv).    Eighth Amendment Deliberate Indifference to Serious Medical Needs

Liberally construing Charging Crow's complaint, he alleges that he was denied medical care for his Hepatitis A, self-harm, vision problems, and breathing troubles in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Doc. 1 at 1–2, 4. "[D]eliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05 (footnotes omitted). "This conclusion does not

11

mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing *Est. of Rosenberg*, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he or she] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman*, 114 F.3d at 784 (internal quotation omitted). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *see also Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998) ("[C]onstructive knowledge, or the 'should-have-known' standard, is not sufficient to support a finding of deliberate indifference . . . .").

The United States Supreme Court has held that personal involvement is not necessarily required for official capacity claims for injunctive relief. *Ex parte Young*, 209 U.S. at 127. But because Eighth Amendment claims for cruel and unusual punishment typically require some level of intent, some courts have held that the subjective component can be met through "the

institution's historical indifference[.]" *Whirl Wind Horse v. Lincoln Cnty.*, 4:24-CV-04148-RAL,

2025 WL 501857, at *6 (D.S.D. Feb. 14, 2025) (quoting *LaMarca v. Turner*, 995 F.2d 1526,

1542 (11th Cir. 1993)); *see also Alberti v. Sheriff of Harris Cnty.*, 978 F.2d 893, 894–95 (5th Cir.

1992) (per curiam) (finding "that the state knew" of severe overcrowding in Harris County jails);

*Terry ex rel. Terry v. Hill*, 232 F. Supp. 2d 934, 944 (E.D. Ark. 2002) ("looking at the entire state

of Arkansas, including the executive and legislative branches," to determine whether "the State

ha[d] been deliberately indifferent to the needs of pretrial detainees" because defendant, "[i]n his

official capacity, . . . [was] merely a representative of . . . the State of Arkansas in the system of

mental health treatment" (footnote omitted)).

Here, SDSP staff were aware that Charging Crow had previously cut himself multiple

times, but SDSP staff members did not provide him medical care. Doc. 1 at 2. Liberally

construed, he alleges that the institution was historically indifferent because the employees of the

SDSP were aware of his serious medical needs but did not take any action to provide him

medical care. Thus, Charging Crow's Eighth Amendment deliberate indifference to serious

medical needs claims against Benting in her official capacity for injunctive relief survives

§ 1915A screening.

### (v).    Eighth Amendment Deliberate Indifference to Conditions of Confinement

Charging Crow alleges that he was housed in a cell covered in glass shards and in an area

that smelled like gas. Doc. 1 at 4–5. He also claims that his rights have been violated because the

SDSP does not have a phone in a unit for severely mentally ill inmates who cannot at times

defend themselves or communicate. *Id.* at 2. "[T]he Constitution 'does not mandate comfortable

prisons'; it prohibits 'inhumane ones.'" *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995)

(quoting *Farmer*, 511 U.S. at 832). The Supreme Court has clarified that only "extreme

deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave

to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9

(1992) (citation and internal quotation omitted). The Supreme Court has listed as basic human

needs "food, clothing, shelter, medical care, and reasonable safety[.]" *Helling v. McKinney*, 509

U.S. 25, 32 (1993) (citation omitted).

     In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner

must prove that (1) objectively, the deprivation was sufficiently serious to deprive him of the

minimal civilized measures of life's necessities or to constitute a substantial risk of serious harm

to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to

inmate health or safety. *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998) (citing *Farmer*, 511

U.S. at 834). An Eighth Amendment challenge to conditions of confinement must examine the

totality of the circumstances. *Villanueva v. George*, 659 F.2d 851, 854 (8th Cir. 1981) (en banc).

Even if no single condition would be unconstitutional in itself, the cumulative effect of prison

conditions may subject inmates to cruel and unusual punishment. *See id.*; *see also Tyler v. Black*,

865 F.2d 181, 183 (8th Cir. 1989) (en banc).

     Here, Charging Crow alleges he was housed in a cell covered in glass, which got into his

hair, eyes and privates. Doc. 1 at 4. He reported the conditions to prison staff, but the staff did

nothing. *Id.* Charging Crow does not allege that Benting was personally involved, but his

complaint could be liberally construed to allege that the institutional staff were historically

indifferent from their refusal to move him or clean up the glass despite his multiple requests. *Id.*

Although the other conditions do not rise to a violation of the Eighth Amendment, Charging

Crow's Eighth Amendment deliberate indifference to conditions of confinement claim against

Benting in her official capacity for injunctive relief survives § 1915A screening.

### (vi).   Americans With Disabilities Act

Charging Crow claims that conditions violate the Americans With Disabilities Act (ADA). Doc. 1 at 2, 4. He does not specify which section of the ADA his claim falls under. *Id.* This Court liberally construes Charging Crow's complaint to allege a failure to make reasonable accommodations claim under Title II of the ADA. Title II states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 886 (8th Cir. 2009). To allege a failure to provide a reasonable accommodation claim, a plaintiff must show:

> (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the [penitentiary's] services, programs, or activities, or was otherwise subjected to discrimination by the [penitentiary]; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability.

*Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010) (per curiam). Even if Charging Crow was disabled under the ADA, he has not shown that he was discriminated against based on a disability or that a disability caused him to be denied participation in penitentiary services, programs, or activities. *See generally* Doc. 1. Thus, Charging Crow's ADA claim against Benting in her official capacity for injunctive relief is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### (vii).   Fourteenth Amendment Due Process

Charging Crow's complaint could be liberally construed to allege a Fourteenth Amendment due process claim for his money that was taken. Doc. 1 at 5. However, the only relief Charging Crow appears to seek related to this claim is money damages. *Id.* Further, an

intentional deprivation of property does not violate due process if there is an adequate post-deprivation remedy, unless the property deprivation occurred pursuant to an established state procedure. *Hudson v. Palmer*, 468 U.S. 517, 534, 536 (1984) (citation omitted). South Dakota law provides an adequate post-deprivation remedy: SDCL § 21-3-3 recognizes a cause of action for wrongful conversion of personal property. Charging Crow does not allege that the deprivation of his property occurred pursuant to an established state procedure. Thus, Charging Crow's Fourteenth Amendment due process claim against Benting in her official capacity for injunctive relief is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### (viii).  Supplement

Charging Crow mailed a letter to this Court providing information about events occurring after he filed his complaint. *See* Doc. 7. He did not move to supplement his complaint. Even if this Court liberally construes his filing as a request to supplement, his supplemental claim would be dismissed.

While Charging Crow was in lockdown, inmates told him that some inmates have not been allowed to shower or clean their clothes in over five years. *Id.* at 1. He fears that retaliation to the inmates suffering from mental illness will occur because he filed this document with the Court. A pro se plaintiff can assert their own claim in federal court, but a pro se plaintiff cannot bring claims on behalf of others. *Black Bear v. Wickre*, 5:24-CV-05065-RAL, 2025 U.S. Dist. LEXIS 63613, at *26 (D.S.D. Mar. 20, 2025) (citing 28 U.S.C. § 1654). Thus, Charging Crow cannot assert claims on behalf of other prisoners at the SDSP.

He also alleges that Health Services have registered mental health patients as disease communicable. Doc. 7 at 2. He further states that "this is were they receive the Daily new's And

up Dates cause [he] hear[s] And feel a lot of these guys breathing And thinking to mental health

staff Daily, even acting up when Staff asks them to thanking them And promising the inmates

something like 10$ A week canteen." *Id.* It is unclear from Charging Crow's filing what, if any,

claim he is alleging and if he is attempting to assert a claim on behalf of other inmates. Thus,

even if this Court liberally construes Charging's Crow's filing as a supplement, it would be

dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C.

§§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## II.     Request for Forms and Copies (Doc. 10)

Charging Crow requests that he receive "1915(5)(c) forms 1915(5)(e) And (5)(f) And

(5)(G) (5)(J) forms[,] Transcripts of proceedings (6)(a) Id. (6)(b) Transcripts of proceedings

payments not allowed (7)(a) Expenses associated with Discovery (Aguirre Addyson) (7)(b)

(7)(c) (7)(D) Copies of records 9 And 8 11(a) 11(b) waivers not allowed 12 cost of

translations[.]" Doc. 10 at 1. It is unclear what Charging Crow is truly seeking. To the extent that

he seeks forms under each section of § 1915, his request is denied because this Court does not

have local forms for each section of § 1915. However, this Court will direct the Clerk of Court to

mail Charging Crow a § 1983 packet.

Charging Crow also claims that Addyson Aguirre, General Counsel for the South Dakota

Department of Corrections, did not provide him a copy of what was sent to this Court. Doc. 10 at

1. However, this Court did not receive a response from Aguirre until several days after receipt of

Charging Crow's request. Doc. 11. Thus, it is unclear if Charging Crow has received the

documents that Aguirre submitted to this Court. If he did not, he can re-file a request for copies,

which will be considered at that time.

To the extent that Charging Crow's filing requests copies of any other document, it is unclear what docket numbers he is requesting copies of. He requests "copies of records 9 And 8." Doc. 10 at 1. However, Charging Crow has labeled as #8 what is really Doc. 10. Thus, his request is denied as vague. However, the Clerk of Court is directed to mail a copy of this Court's docket sheet to Charging Crow. Charging Crow may refile a clear request for copies and payment if required in accordance with this Court's fee schedule. Dist. of S.D., *Fee Schedule* (Dec. 1, 2023), https://www.sdd.uscourts.gov/sites/sdd/files/Fee%20Schedule%2012.1.23.pdf (requiring a $0.50 charge per page for reproduction of any record on paper).

## III.    Request for Placement in Inmate Financial Responsibility's Program (Doc. 13)

Charging Crow is "requesting A motion for this prisoner to be placed in inmate financial responsibility's programs (IFRP) 18 USCA 3572(d) To order for prison is depriving [him] of [his] property with out Due Process of law after prison withdrew unlimited money from [his] Account." Doc. 13 at 1. Section 3572(d) provides for the time and method of payment of fines and restitution in federal criminal cases. Thus, Charging Crow's request, Doc. 13, is denied.

## IV.    Summary Judgment (Doc. 14)

Charging Crow asks that this Court order

> Sua Sponte for Addy Aguirre lying about 6 policies 600-02(IV)(10)(A)(2) And 28 U.S.C. § 1915(b)(1) Telmate inmate Account phone services . . . Sufficient evidence is Here on South Dakota grounds but must be sua sponte summary judgement [sic] To seek relief. And obtain other Accounts inmate Accounts Before . . . Charging Crow . . . refile with Touchpayonline and Viapath informations.

Doc. 14 at 1–2 (spelling and grammar errors in original) (emphasis omitted). To the extent that Charging Crow seeks summary judgment, his request is denied. No defendant has been served, and discovery has not begun or been completed. *See Elmore v. Shipman*, 2024 U.S. Dist. LEXIS 240392, at *2–3 (E.D. Ark. Apr. 11, 2024) (recommending denial of a motion for summary

judgment when defendants have not been served and there has been no discovery conducted), *R&R adopted by* 2025 U.S. Dist. LEXIS 32038 (E.D. Ark. Feb. 24, 2025). Charging Crow also appears to request that summary judgment be entered against Aguirre, Touch Pay Online, and Viapath Informations—none of whom are named as defendants. Further, Charging Crow has not complied with this Court's local rules for motions for summary judgment.

> All motions for summary judgment must be accompanied by a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Each material fact must be presented in a separate numbered statement with an appropriate citation to the record in the case.

D.S.D. Civ. LR 56.1(A). Thus, Charging Crow's request for summary judgment, Doc. 14, is denied without prejudice.[7]

## V.    Conclusion

Accordingly, it is ORDERED:

1. That Charging Crow's claims against Benting in her individual capacity are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

2. That Charging Crow's claims against Benting in her official capacity for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

3. That Charging Crow's Eighth Amendment deliberate indifference to serious medical needs claims against Benting in her official capacity for injunctive relief survives § 1915A screening.

---

[7] Charging Crow's request also appears to be a request for discovery, but discovery requests are generally not filed with the Court. *See* Fed. R. Civ. P. 5(d)(1)(A) ("discovery requests and responses must not be filed until they are used in the proceeding or the court orders filing").

4. That Charging Crow's Eighth Amendment deliberate indifference to conditions of confinement claim against Benting in her official capacity for injunctive relief survives § 1915A screening.

5. That Charging Crow's remaining claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

6. That Charging Crow's request for placement in inmate financial responsibility's program, Doc. 13, is denied.

7. That the Clerk of Court shall mail to Charging Crow a § 1983 packet.

8. That the Clerk of Court shall mail to Charging Crow a copy of the docket sheet.

9. That the Clerk shall send a blank summons form and United States Marshals Service Form (Form USM-285) to Charging Crow so that he may complete the form to cause the complaint to be served upon Defendant Benting.

10. That Charging Crow shall complete and send the Clerk of Court a summons form and USM-285 form for Benting within **thirty days from the date of this Court's screening order**. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed.

11. That the United States Marshals Service shall serve the completed summons, together with a copy of the complaint, Doc. 1, and this order upon Defendant.

12. That Defendant serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the Defendant falls under Fed. R. Civ. P. 12(a)(2) or (3).

20

13. That Charging Crow keep the Court informed of his current address at all times. All

parties are bound by the Federal Rules of Civil Procedure and by this Court's Civil Local

Rules while this case is pending.

DATED May **23**, 2025.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

21